IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AIRCRAFT HOLDING SOLUTIONS, LLC, et al., | § | |
| | § | |
| | § | |
| Plaintiffs-counterdefendants, | § | |
| | § | Civil Action No. 3:18-CV-0823-D |
| VS. | § | |
| | § | |
| LEARJET, INC. d/b/a BOMBARDIER AIRCRAFT SERVICES (BAS), | § | |
| | § | |
| | § | |
| Defendant-counterplaintiff. | § | |
| | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action arising from damage to a Bombardier Challenger 300 aircraft ("Aircraft") during routine maintenance, the court decides three motions: the motion of defendant-counterplaintiff Learjet Inc. d/b/a Bombardier Aircraft Services ("BAS") to exclude testimony of plaintiffs' expert witnesses; the motion of plaintiffs-counterdefendants Aircraft Holding Solutions, LLC ("AHS") and CH300, LLC ("CH300") (collectively, "plaintiffs") to strike BAS's late-designated experts and untimely expert report; and plaintiffs' motion to exclude the testimony of BAS's experts. For the reasons set out below, the court denies BAS's motion to exclude the testimony of plaintiffs' expert witnesses, except to the extent that it limits the scope of testimony as described in this memorandum opinion and order; denies plaintiffs' motion to strike; and grants in part and denies in part plaintiffs' motion to exclude.

I

The court will focus its discussion of the background facts and procedural history on what is pertinent to this decision.[1]

BAS moves to exclude the testimony of plaintiffs' experts: Donnie Lewellen ("Lewellen"), John E. Cochran, Jr., Ph.D. ("Dr. Cochran"), Mathieu Baril ("Baril"), Rolf Hamerquist ("Hamerquist"), and Pat Duggins ("Duggins"). Plaintiffs oppose this motion.

Plaintiffs move to strike the allegedly untimely-filed disclosures of BAS's non-retained experts, Claude Robert ("Robert") and Tim Paul ("Paul"), and BAS's allegedly untimely supplemental expert report of its retained expert, Ken Dufour ("Dufour"). Plaintiffs also move to strike and/or exclude the testimony of BAS's retained expert, Christopher Poreda, Esquire ("Poreda"), and its non-retained experts, Paul, Robert, Errol Applewhaite ("Applewhaite"), Mike Dittmar ("Dittmar"), Fintan Farrell ("Farrell"), Mario Asselin ("Asselin"), James Anderson ("Anderson") (who was substituted for Raymond Thompson with leave of the court), and Marc Rivest ("Rivest"). BAS opposes these motions.

The court is deciding all three motions on the briefs.

II

The court begins with plaintiffs' motion to strike BAS's untimely expert designations and supplemental expert report.

_____

[1]For a broader recitation of the background facts and procedural history, *see, e.g.*, *Aircraft Holding Solutions, LLC v. Learjet, Inc.*, 2022 WL 562760, at *1-3 (N.D. Tex. Feb. 23, 2022) (Fitzwater, J.).

A

On January 25, 2021 the court extended the expert designation deadline for parties with the burden of proof on a claim or defense to February 24, 2021, the rebuttal expert deadline to March 24, 2021, and the deadline for completing discovery to April 29, 2021. On March 24, 2021 BAS timely filed its expert disclosures, which disclosed Dufour, an accredited appraiser, as a retained expert.  On September 17, 2021 BAS designated two test pilots, Paul and Robert, as fact and non-retained expert witnesses.  On December 2, 2021 BAS served a supplemental report by Dufour, which is dated November 30, 2021.

Plaintiffs contend that BAS's disclosure of Robert and Paul as non-retained expert witnesses and Dufour's supplemental expert report are untimely, and they move to strike Paul and Robert as expert witnesses and to strike Dufour's November 30, 2021 supplemental report.  BAS responds that Paul and Robert are allowed to testify as fact witnesses and that it only designated them as expert witnesses out of an abundance of caution; that its disclosure of Paul and Robert was a timely supplemental disclosure under Fed. R. Civ. P. 26(e); and that, even if its disclosure of Paul and Robert was untimely, the late disclosure was harmless. BAS also maintains that the untimeliness of Dufour's supplemental report was harmless.

B

The court turns first to plaintiffs' motion to strike Dufour's supplemental expert report.

In Dufour's original March 24, 2021 expert report, he provided an appraisal of the Aircraft before and after it fell off its maintenance jacks (the "Incident").  As part of his

appraisal he considered, *inter alia*, the specifications of the Aircraft and "a study of the current and historical market for Challenger 300 aircraft[s] . . . ."  Ps. App. (ECF No. 231) at 25.  Dufour opined that the value of the Aircraft in March 2017, before the Incident, was $6,727,720; the market value of the Aircraft in March 2021 with diminution due to damage and maintenance-due was $4,200,000; and that the February 12, 2021[2] sale price of $3,800,000 represented a "bargain price" for the Aircraft.  *Id.* at 26.

In his November 30, 2021 supplemental report, Dufour provided updated market data based on recent sales of other Challenger 300 aircrafts and based on the subsequent October 2021 sale of the Aircraft at issue in this case.  Dufour's report notes that the Aircraft sold for $3,800,000 in February 2021 and then sold for $7,400,000 in October 2021.  He stated that "[t]he sale price of $7,400,000 indicates a normal price and average transaction reflecting no Diminution of Value impact."  *Id.* at 110.

Rule 26(a)(2)(B) provides that the disclosure of certain expert witnesses must be accompanied by a written report that contains, *inter alia*, "a complete statement of all opinions the witness will express . . . ."  Rule 26(e)(1)(A) requires that disclosures made under Rule 26(a) be supplemented "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective

---

[2]Dufour's original and supplemental reports state that plaintiffs sold the Aircraft on February 12, 2021, but the bill of sale reflects that the sale occurred on March 17, 2021.  This inconsistency does not impact the court's decision, because no party disputes that Dufour's report refers to the sale of the Aircraft by plaintiffs to a third party, Central Connecticut Aircraft, LLC.

information has not otherwise been made known to the other parties during the discovery process or in writing." Expert witnesses who are required to provide a report under Rule 26(a)(2)(B) must supplement "information included in the report and . . . information given during the expert's deposition . . . by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Rule 26(e)(2); *see also Jacobs v. Tapscott*, 2006 WL 2728827, at *11 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (holding that supplementation of expert's report was due by the deadline for Rule 26(a)(3) pretrial disclosures), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

"[T]he line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction . . . depends on the facts of the case." *Charter Sch. Sols. v. GuideOne Mut. Ins. Co.*, 2019 WL 5258055, at *2 (W.D. Tex. June 28, 2019) (quoting *Charles v. Sanchez*, 2015 WL 808417, at *8 (W.D. Tex. Feb. 24, 2015)). "The purpose of supplementary disclosures is just that—to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline." *Jacobs*, 2006 WL 2728827, at *12 (quoting *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998)). Thus "[w]hen 'the analysis and opinions in the second report [are] largely new rather than supplementary,' they cannot qualify as a supplemental expert report under Rule 26(e)." *Albritton v. Acclarent, Inc*., 2020 WL 11627275, at *13 (N.D. Tex. Feb. 28, 2020) (Lynn, C.J.) (second alteration in original) (quoting *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016)).

The court concludes that Dufour's opinion is a supplemental opinion under Rule

- 5 -

26(e)(2) and therefore timely disclosed in the November 30, 2021 supplemental report. Dufour's original report included his opinion regarding the February 2021 sale price of the Aircraft based on market conditions and the Aircraft's valuation, and Dufour's supplemental report provides his opinion regarding the October 2021 sale price based on market conditions. Dufour's supplemental report therefore does not modify how he arrived at the value of the Aircraft, such as via a new methodology for determining value; rather, the supplemental report provides his assessment of the October 2021 sale price of the Aircraft based on updated market data. Dufour could not have included these sales as supporting data in his original report because the sales—including the October 2021 sale of the Aircraft—had not yet occurred. Thus Dufour's report is supplemental. *See Kaisha v. Lotte Int'l Am. Corp.*, 2019 WL 581544, at *3 (D. N.J. Feb. 13, 2019) ("Courts have interpreted Rule 26(e) to allow supplementation, for example, when an expert receives newly produced information after submitting his or her expert report . . . ."). The court holds that Dufour's supplemental report is timely under Rule 26(e) because the deadline for the parties to make pretrial disclosure had not passed when he supplemented his report.[3]

_____

[3]Moreover, even if the court assumes *arguendo* that Dufour's supplemental report was untimely, it would decline to strike the supplemental report or exclude Dufour's testimony related to the supplemented part of the report.

In assessing whether to permit testimony based on an untimely supplemental expert report, the court, in exercising its discretion, considers

> (1) the explanation for making the supplemental disclosure at the time it is made; (2) the importance of the supplemental information to the proposed testimony of the expert, and the expert's importance to the litigation; (3) potential prejudice to

C

The court now turns to plaintiffs' motion to strike BAS's designation of Paul and Robert as non-retained expert witnesses.[4]

1

BAS contends first that it was not required to disclose Paul and Robert at all because

---

an opposing party; and (4) the availability of a continuance to mitigate any prejudice.

*Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *13 (N.D. Tex. June 22, 2010) (Fitzwater, C.J.) (quoting *Jacobs*, 2006 WL 2728827, at *12). Considering these factors, the court concludes that: BAS's explanation that it could not disclose the supplemental report sooner is satisfactory because the sales that the report is based on had not yet occurred when Dufour's original report was disclosed; although the parties dispute the importance of the specifics of the October sale, Dufour's testimony regarding the value of the Aircraft compared to the market in general is important; plaintiffs face some prejudice because the supplemental report was filed after the discovery deadline, but this prejudice is lessened by the fact that the report was filed over nine months before the current trial setting and plaintiffs were previously able to depose Dufour; and a continuance would not cure the prejudice unless the court also revived the discovery deadline.

    [4]Plaintiffs also contend that Paul and Robert are retained expert witnesses and were therefore required to produce an expert report pursuant to Rule 26(a)(2)(B). The court disagrees. Rule 26(a)(2)(B) only requires a written report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." There is no evidence in the record that Paul and Robert are retained or specially employed to provide testimony in this case; instead, the record reflects that they are test pilots for Bombardier Inc., a former party to this lawsuit. *See* D. Resp. (ECF No. 236) at 9; D. App. (ECF No. 240) at 73. Because Paul and Robert are employees of a former party and there is no evidence that they regularly provide expert testimony as a part of their employment, they are not retained expert witnesses and were not required to provide an expert report under Rule 26 (a)(2)(B). *See* Rule 26(a)(2)(C) advisory committee's note (2010 amendment) ("Frequent examples [of witnesses who are not required to provide reports under Rule 26(a)(2)(B)] include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony.").

they are fact witnesses, and that it only disclosed them as non-retained experts out of an abundance of caution. "The distinction between lay and expert testimony is that lay testimony results from a process of reasoning familiar in everyday life, whereas expert testimony results from a process of reasoning that can only be mastered by specialists in the field." *United States v. York*, 600 F.3d 347, 360-61 (5th Cir. 2010); *see United States v. Ebron*, 683 F.3d 105, 137 (5th Cir. 2012) ("A lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury."). "[A]ny part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701." *United States v. Cooks*, 589 F.3d 173, 180 (5th Cir. 2009).

The court concludes that BAS was required to disclose Paul and Robert as non-retained expert witnesses. Paul and Robert can only testify as lay witnesses to the extent their testimony does not rest on scientific, technical, or specialized knowledge. And at least parts of their testimony *does* rest on specialized knowledge. For example, their opinion that the Aircraft flew symmetrically, and therefore was properly repaired and is airworthy, is based on their specialized knowledge as pilots. The court therefore rejects BAS's contention that it was not required to disclose Paul and Robert as non-retained expert witnesses because they are fact witnesses.

## 2

BAS also maintains that its designation of Paul and Robert is a timely supplemental disclosure under Rule 26(e)(1). Rule 26(e)(1) requires a party who has made a disclosure

under Rule 26(a) to supplement or correct the disclosure if the party learns that it is materially incomplete or incorrect. Supplementation or correction must be done "in a timely manner." Rule 26(e)(1).

The court concludes that BAS's supplementation of its Rule 26(a)(2) expert disclosures was made "in a timely manner." The record reflects that Paul and Robert performed the test flights on August 29 and 30, 2021 and that BAS made its supplemental disclosures to plaintiffs on September 17, 2021. This disclosure was made just weeks after the test flights, almost six months before the trial setting that was then in place, and almost one year before the current trial setting.

Accordingly, the court denies plaintiffs' motion to strike as untimely BAS's designations of Paul and Robert and Dufour's supplemental expert report.

III

The court now considers the part of plaintiffs' motion to exclude testimony of BAS's experts in which plaintiffs seek to exclude BAS from introducing the testimony of its non-retained experts (disclosed on February 24, 2021 and March 24, 2021) based on BAS's failure to comply with Rule 26(a)(2)(C)(i) and (ii).[5] The court will address below the balance of the motion, which seeks to exclude, in part, the testimony of Poreda as unreliable and to exclude the testimony of Paul and Robert as unreliable and irrelevant. *See infra* § IV(E)-(F).

---

[5]Plaintiffs also move for a Fed. R. Evid. 104 hearing on the admissibility of the proposed testimony of Christopher Kelly ("Kelly"). BAS responds that it has not designated Kelly as an expert and is unaware of a Kelly who is involved in this litigation. The court therefore denies plaintiffs' request for a hearing.

A

Plaintiffs contend that BAS failed to properly disclose the opinions of its non-retained experts Applewhaite, Dittmar, Farrell, Asselin, Anderson, and Rivest. They maintain that BAS's disclosures of its non-retained experts do not comply with Rule 26(a)(2)(C) because they fail to specify the factual basis that the experts relied upon in forming their opinions and because the summaries of their opinions are impermissibly vague. BAS responds that its designations provide sufficient summaries of the non-retained experts' opinions and the factual bases that support the opinions.

B

Under Rule 26(a)(2)(C), a party who is not required to produce the written report of an expert witness must still disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." This Rule is intended to ensure that an opposing party has some notice of what an expert witness who is not retained or specially employed will testify about. *See* 8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2031.2, at 91-92 (3d ed. 2010 & Supp. 2022). The disclosure must at least "state opinions, not merely topics of testimony[,]" and "contain . . . a summary of the facts upon which the opinions are based." *Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, 2017 WL 90366, at *2 (N.D. Tex. Jan. 10, 2017) (Fitzwater, J.). "[T]he requirement of a 'summary' may be satisfied by an 'abstract, abridgement, or compendium of the opinion and facts supporting the opinion.'" *Id.* (quoting *Anders v. Hercules Offshore Servs., LLC*,

- 10 -

311 F.R.D. 161, 164 (E.D. La. 2015)).  And the court "must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have."  *Id.* (quoting Rule 26(a)(2)(C) advisory committee's note (2010 amendment)).

C

The court has reviewed BAS's Rule 26(a) disclosure of expert witnesses and concludes that the disclosure adequately states the subject matter on which the witnesses in question are expected to testify and also provides a summary of the facts and opinions on which the witnesses are expected to testify.  *See, e.g.*, *id.* at *2-4 (holding that disclosure that referred to deposition transcripts and other discovery documents and provided a list of the opinions to which experts were expected to testify satisfied the requirements of Rule 26(a)(2)(C)).  The court therefore denies the part of plaintiffs' motion in which they seek to exclude BAS from introducing the testimony of its non-retained experts based on BAS's failure to comply with Rule 26(a)(2)(C).[6]

---

[6]Throughout the sections of their brief that address Rule 26(a)(2)(C), plaintiffs make one or two-word assertions that these non-retained witnesses have "no qualifications" or that their opinions are "unreliable" or "irrelevant."  *See, e.g.*, Ps. Br. (ECF No. 233) at 9, 14, 15.  It is unclear whether plaintiffs intend by these conclusory assertions to argue that this testimony should be excluded under Fed. R. Evid. 702.  To the extent plaintiffs *do* intend to make this argument, the court concludes that the assertions are insufficient.  This is so because conclusory statements that do not even cite to Rule 702 are insufficient to call into question the admissibility of this testimony.  *See Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001) ("To trigger a *Daubert* inquiry, an expert's testimony, or its 'factual basis, data, principles, methods, or their application,' must be 'called sufficiently into question.'" (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999))).

- 11 -

IV

The court now turns to BAS's motion to exclude the testimony of plaintiffs' experts and the remaining part of plaintiffs' motion to exclude the testimony of BAS's experts.

A

The court decides these motions in its role as gatekeeper concerning the admissibility of expert testimony. *See, e.g.*, *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("Rule 702 charges trial courts to act as 'gate-keepers . . . .'"). "[W]hile exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Id.* at 250.

The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

First, an expert must be qualified. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training or education.'" *Cooks*, 589 F.3d at 179 (quoting Fed. R. Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.* (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

Second, to be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone*, 288 F.3d at 245 (quoting *Daubert*

- 12 -

*v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)).  "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593).

Third, "[r]eliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Id.* (quoting *Daubert*, 509 U.S. at 592-93). The testimony must constitute "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590.

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence.  *See id.* at 592 n.10.  The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it."  *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (per curiam).  "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration."  *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.

B

The court first addresses BAS's argument that the testimony of plaintiffs' experts regarding post-Incident conduct should be excluded as irrelevant.

- 13 -

1

BAS seeks to exclude the testimony of Lewellen, Dr. Cochran, Baril, and Hamerquist, and to partially exclude the testimony of Duggins, on the basis that their opinions relate to post-Incident conduct and are therefore no longer relevant because the court granted BAS summary judgment as to AHS's post-Incident negligence claims.  Plaintiffs respond that the post-Incident expert opinions and testimony are relevant to plaintiffs' defenses against BAS's counterclaim seeking storage fees and to plaintiffs' claims against BAS for loss in the Aircraft's value and loss of its use.

2

The court disagrees with BAS's assertion that, because these experts' opinions relate to the post-Incident repairs of the Aircraft, the opinions are irrelevant and should be excluded.  Although BAS is correct that the only negligence claim remaining against BAS is AHS's claim against BAS for its alleged negligence based on the Incident itself, this does not mean that all opinions and testimony regarding the subsequent repairs to the Aircraft and whether or when the Aircraft was returned to airworthiness are irrelevant.

For example, testimony regarding whether the Aircraft was airworthy and whether the repairs to the Aircraft were sufficient to  return it to its pre-Incident condition are relevant to BAS's counterclaim for storage fees and CH300's defense to that counterclaim.  CH300 appears to posit that BAS is not entitled to storage fees because the Aircraft was never fully repaired and the repairs that were made did not comply with federal guidelines.  CH300 therefore maintains that it was under no obligation to take possession of the Aircraft—and

that BAS was not entitled to storage fees—until the Aircraft was restored to its pre-Incident condition.

And evidence regarding whether the Aircraft was properly repaired and whether or when it was returned to airworthy status could be relevant to the jury's calculation of damages. For example, CH300 alleges that its damages include the loss of use of the Aircraft. Testimony regarding whether or when the Aircraft was properly repaired and airworthy could assist the jury in determining the extent, if any, to which CH300 was damaged by the loss of use. Thus the court concludes that the opinions of BAS's experts regarding the post-Incident repairs and whether the Aircraft was ever returned to airworthy status could assist the jury in determining facts at issue in this case. The court therefore rejects BAS's argument that any fact or opinion testimony regarding the post-Incident repairs should be entirely excluded.

This conclusion is subject, however, to the court's exercising its authority under Rules 403[7] and 611(a)[8] to confine the scope of the testimony regarding post-Incident repairs of the

---

[7]Fed. R. Evid. 403:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

[8]Fed R. Evid. 611(a):

> The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:

Aircraft to that which would assist the jury in determining facts at issue, does not waste time, and is not needlessly cumulative.  For example, while testimony that repairs to the Aircraft had or had not restored it to its pre-Incident condition would likely be relevant and admissible, extensive or detailed testimony about *how* the post-Incident repairs were or were not made is probably destined for limitation or exclusion under Rules 403 and 611(a).  In other words, while evidence concerning whether the repairs successfully restored the Aircraft to its pre-Incident condition is relevant, extensive or detailed testimony regarding *how* the repairs were or were not conducted is likely subject to limitation or exclusion.

## C

The court now turns to BAS's alternative arguments that seek to exclude the opinions of plaintiffs' retained expert, Duggins.

## 1

BAS does not dispute that Duggins, a mechanic who holds a Federal Aviation Airframe and Powerplant license and has over 40 years of experience regarding aircraft mechanics, is qualified to provide an opinion regarding the repair of the Aircraft.  Instead, BAS contends that Duggins lacks a reliable basis for all of his opinions.  BAS contends that Duggins lacks a reliable basis for his opinions because he based them on Federal Air

---

(1) make those procedures effective for determining the truth;
(2) avoid wasting time; and
(3) protect witnesses from harassment or undue embarrassment.

- 16 -

Regulations ("FARs") and manual requirements for aviation, but he lacks knowledge of the actual regulations that were allegedly violated. Plaintiffs respond that Duggins' opinions are reliable because, *inter alia*, he compared the repair documentation related to the Aircraft to relevant FARs and manual requirements.

### 2

The court begins by noting that many of Duggins' opinions appear to relate to whether Bombardier Inc. ("Bombardier") and/or BAS was negligent in repairing the Aircraft. As the court has already explained, *see supra* § IV(B)(2), because the court has granted summary judgment to BAS and Bombardier regarding AHS's post-Incident negligence claim, post-Incident repair evidence, including Duggins' testimony, is limited.

The court disagrees, however, with BAS's assertion that Duggins' opinions should be excluded as unreliable because he lacks knowledge of the requirements or regulations that were allegedly violated. BAS relies on *Langenbau v. Med-Trans Corp.*, 167 F.Supp.3d 983 (N.D. Iowa 2016), for the proposition that an expert cannot opine on the best industry practices without offering specific sources or standards for those practices. But *Langenbau* is distinguishable. For example, in *Langenbau* the court noted that the expert relied only on his "'43 years of experience' as the basis for his opinions," his citation to 14 C.F.R. § 119.69 was not timely, and he could not cite any specific publication to support any of what he opined were "best industry practices." *Langenbau*, 167 F.Supp.3d at 1000-01. In the instant case, by contrast, although Duggins' report is somewhat difficult to follow, plaintiffs have demonstrated that the report *does* contain multiple citations to regulations and requirements

from various manuals, including the Bombardier Aircraft Services Repair Station Manual and the Quality Control Manual. *See, e.g.*, Ps. App. (ECF No. 242) at 43, 52, 57, 59, 66-67. The court therefore denies BAS's motion to exclude Duggins's opinion as unreliable in its entirety on this basis. If Duggins's opinions are inconsistent with the regulations and manuals he cites, this will be revealed through vigorous cross-examination and the presentation of contrary evidence. *See, e.g.*, *Daubert*, 509 U.S. at 596.

BAS also challenges three of Duggins' opinions: (1) that the Aircraft was over-stressed during recovery due to improper shoring; (2) that a symmetry check was mandatory; and (3) that Bombardier lacked authority to install a part with a serial number that ended in the letter "S."

With respect to the first opinion, the court agrees that Duggins lacks a reliable basis to opine as to whether the Aircraft was subject to undue stress. As he testified in his deposition, he is not able to quantify the stress to which the shoring subjected the Aircraft, nor does he know the stress level that the components were designed to tolerate. The court therefore excludes Duggins' opinion that the Aircraft was over-stressed, because it lacks a sufficiently reliable factual basis, and it limits Duggins' opinion regarding the shoring to whether it complied with regulatory or other manual requirements, assuming this testimony meets the relevance requirements previously discussed.

The court disagrees that Duggins' second opinion should be excluded as unreliable. BAS seeks to exclude Duggins' opinion regarding whether certain symmetry checks were required; this argument is based on BAS's disagreement with Duggins' interpretation of a

- 18 -

requirement of the Bombardier repair manual.  But this objection goes to whether Duggins's opinion is correct, not whether it is reliable.  *See Patton v. Metro. Lloyds Ins. Co. of Tex.*, 2022 WL 2898946, at *3 (N.D. Tex. Feb. 14, 2022) (Hendrix, J.) ("In conducting the reliability analysis, a court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology."); *Nationwide Agribusiness Ins. Co. v. Deere & Co.*, 2020 WL 8768073, at *4 (N.D. Tex. Oct. 23, 2020) (O'Connor, J.) ("The proponent need not prove to the judge that the expert's testimony is correct, but [he] must prove by a preponderance of the evidence that the testimony is reliable." (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (per curiam))).  Accordingly, the court will not exclude Duggins' opinion as unreliable, but BAS may raise this issue for the jury to consider when assigning weight and credibility to Duggins' testimony.  *See, e.g.*, *Viterbo*, 826 F.2d at 422.

Finally, the court disagrees with BAS's contention that Duggins' third opinion should be excluded.  BAS maintains that the court should exclude Duggins' opinion that a new wing spar was improperly documented, in violation of the FARs, because some documentation contains a serial number that does not end in the letter "S," but the part that was installed does end in the letter "S."  BAS posits that this opinion is unreliable because Duggins testified that he does not know what the letter "S" at the end of the serial number signifies.

The court disagrees.  Whether Duggins knows the meaning of the letter "S" at the end of a serial number does not undermine the reliability of his opinion that the failure to document the correct part number is a violation of the FARs.  The court therefore concludes

that this objection does not provide sufficient grounds to exclude Duggins' testimony as unreliable, but that BAS may cross-examine Duggins on this issue at trial.

D

The court now turns to BAS's arguments that seek to exclude certain opinions of one of plaintiffs' retained experts, Dr. Cochran.

1

BAS contends that Dr. Cochran, an engineer and emeritus professor of aerospace engineering, lacks a reliable basis for his opinions that the Aircraft's symmetry and alignment have not been restored to acceptable type-design tolerances; the Aircraft is currently not airworthy because its aerodynamic characteristics have been altered and are currently unknown; the altered aerodynamic characteristics of the Aircraft are due both to the damage from the Incident and the manner in which the Aircraft was repaired; the angles and twists of the Aircraft's wings have not been restored to their pre-Incident condition; and an FAA monitored test flight of the Aircraft should be conducted.  Plaintiffs respond, *inter alia*, that Dr. Cochran's challenged opinions are reliable because he reviewed the Aircraft's post-Incident symmetry and alignment test results, compared those symmetry results with the Aircraft's specifications and the symmetry tolerances published by the Aircraft's manufacturer, and relied on his knowledge and experience of aerodynamics during his review.

2

The court concludes that some of Dr. Cochran's testimony is sufficiently reliable and

that other opinions should be limited in their scope.

First, the court disagrees with BAS's assertion that Dr. Cochran's opinions that the Aircraft's symmetry and alignment have not been properly repaired and that the Aircraft is not airworthy must be excluded because Bombardier is the entity responsible for determining airworthiness and Dr. Cochran's opinions are contrary to its conclusions. BAS cites no authority to support its contention that Bombardier is the party responsible for making a final airworthiness determination. Moreover, BAS cites no authority for the proposition that Bombardier's regulatory authority to make an airworthiness determination would preclude Dr. Cochran from offering a contrary opinion in a forum where the question of airworthiness is being litigated.

The court also disagrees with BAS's assertion that Dr. Cochran's opinions regarding the symmetry of the Aircraft are unreliable because he "has done no testing or calculations to confirm his opinion[s] . . . ." D. Br. (ECF No. 227) at 11. The record reflects that Dr. Cochran relied on the data from multiple symmetry and alignment checks of the Aircraft and compared those data with the manufacturer's specifications and tolerances. The fact that Dr. Cochran relied on data from these symmetry checks instead of performing his own calculations does not render his opinion unreliable; instead, this objection goes to the bases and sources of his opinion and the weight that the jury should assign to his opinion, not to its admissibility. *See Viterbo*, 826 F.2d at 422.

The court will, however, limit Dr. Cochran's testimony regarding the aerodynamic characteristics and performance of the Aircraft. In his deposition, Dr. Cochran testified that

he believed that the symmetry had changed the performance of the Aircraft, but that he could not quantify how the Aircraft's performance had changed. And Dr. Cochran's deposition testimony and expert report reflect that the aerodynamic characteristics of the Aircraft are unknown and would require further test flights in order to confirm. Consequently, the court concludes that Dr. Cochran's testimony regarding the aerodynamic characteristics and performance of the Aircraft should be limited to the alterations to the Aircraft's symmetry due to the Incident and the repairs and whether those alterations were outside the manufacturer's tolerances.

In summary, the court denies BAS's motion to exclude expert testimony, except to the extent it limits the scope of testimony in this memorandum opinion and order.

E

The court now turns to plaintiffs' arguments that two opinions of BAS's retained expert, Poreda, should be excluded as unreliable.

1

Plaintiffs challenge two of the opinions of BAS's retained expert, Poreda, an attorney who previously worked for the Federal Aviation Administration ("FAA"), on the grounds that they lack a reliable basis. Plaintiffs first argue that Poreda's opinion regarding FAA hotline complaints is unreliable because it lacks a factual basis and opines on plaintiffs' subjective knowledge and intent. Plaintiffs also assert that Poreda's opinion that the Aircraft is airworthy despite the fact that a "Form 1"—which demonstrates that a part of the Aircraft was manufactured according to accepted standards—was not included in BAS's work order

is unreliable.

BAS responds that Poreda's opinion regarding the FAA hotline complaint process is reliable because he is not offering an opinion regarding plaintiffs' subjective knowledge or intent, but is opining about the typical process for FAA hotline complaints. BAS maintains that Poreda's opinions regarding the delays and the halt of work on the Aircraft surrounding the hotline complaints are reliable, and that Poreda's opinion regarding whether the initial absence of the Form 1 impacted the airworthiness of the Aircraft is reliable.

2

The court concludes that Poreda's testimony is reliable. Poreda offers no opinion concerning plaintiffs' subjective knowledge or intent; rather, he offers his opinion regarding the normal processing of an FAA hotline complaint and his opinion that plaintiffs' actions delayed the processing of their complaints. These opinions are based on Poreda's 25 years of experience as an attorney for the FAA as well as his review of, *inter alia*, the hotline complaints, FAA letters related to the complaints, and relevant FAA regulations. This provides a sufficiently reliable basis for Poreda's opinions regarding the hotline complaints. *See* Fed. R. Evid. 702 advisory committee's note (2000 amendment) ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. . . .  In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."); *see also Cazorla v. Koch Foods of Miss., LLC*, 2014 WL 11456088, at *4 (S.D. Miss. Sept. 22, 2014) (holding that immigration attorneys'

testimony was sufficiently reliable because it was based on "immigration laws, regulations, and executive guidance in tandem with their experience as immigration lawyers").

The court also concludes that Poreda's opinion that the Aircraft can be airworthy despite the fact that the "Form 1" for a new part was not included in the work order is reliable. Plaintiffs' challenge to this opinion is largely conclusory and asserts that Poreda's own opinion is contradictory. Poreda's report, however, is not contradictory, and his opinion is based on his experience as an FAA attorney, including as a Senior Attorney for Rulemaking and Airworthiness, and on relevant law regarding airworthiness procedures. Such experience and materials provide a sufficiently reliable basis to support Poreda's opinion regarding the required forms for an airworthiness determination.

F

The court now considers plaintiffs' contentions that the testimony of BAS's non-retained experts, Paul and Robert, is unreliable and irrelevant.[9]

1

As the court has explained, *see supra* § II(C), Paul and Robert are test pilots who conducted two test flights of the Aircraft on August 29 and 30, 2021, after plaintiffs sold the

---

[9]In their reply brief in support of their motion to exclude, plaintiffs maintain that BAS's disclosure of Paul and Robert as non-retained experts is insufficient under Rule 26(a)(2)(C). But neither plaintiffs' opening brief in support of their motion to strike nor their opening brief in support of their motion to exclude raises the argument that BAS's disclosure of Paul and Robert is insufficient under Rule 26(a)(2)(C). The court therefore does not consider this argument. *See, e.g.*, *Jacobs*, 2006 WL 2728827, at *7 ("[T]he court will not consider an argument raised for the first time in a reply brief.").

Aircraft to a third-party.  Plaintiffs argue that the pilots' opinions—that (1) the handling characteristics and performance of the Aircraft were not negatively affected by the post-Incident repairs, (2) the Aircraft flew symmetrically, and (3) the Aircraft's performance was not negatively affected by the Aircraft's symmetry—are unreliable and irrelevant.  BAS responds that the pilots' testimony is reliable and supported because it is based on their perceptions during the test flights, their experience as pilots, and documentation related to the test flights.  BAS also contends that their testimony is relevant to, *inter alia*, rebut plaintiffs' contention that the Aircraft was repaired in a manner that rendered it unairworthy and to establish BAS's counterclaim for storage fees.

2

The court concludes that Paul's and Robert's testimony is reliable.  Plaintiffs' contention that there are no facts in the record to support their testimony is incorrect.  BAS has produced flight logs and other documentation of the test flights.  Moreover, Paul's and Robert's testimony regarding the characteristics of the Aircraft during flight is based on their first-hand perceptions during the test flights and their expertise as test pilots.  *See* Fed. R. Evid. 702 advisory committee's note (2000 amendments) ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.").  The court therefore holds that the testimony of Paul and Robert is sufficiently reliable.

3

The court concludes, however, that BAS has not met its burden of demonstrating by a preponderance of the evidence that Paul's and Robert's testimony is *relevant*.

- 25 -

Plaintiffs maintain that Paul's and Robert's testimony will not assist the jury to determine a fact at issue because additional repairs were made to the Aircraft after it was sold and before Paul's and Robert's test flights, so Paul's and Robert's testimony cannot assist the jury in determining the condition of the Aircraft at any time relevant to this litigation.

Because plaintiffs have sufficiently called into question whether this testimony is relevant,[10] BAS now has the burden of proving by a preponderance of the evidence that this testimony is admissible, i.e., that Paul's and Robert's opinion testimony is relevant. *See United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) ("The proponent has the burden of establishing, by a preponderance of the evidence, that the pertinent admissibility requirements are met."); *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009) (stating that the proponent of expert testimony must demonstrate the testimony's "helpfulness to the factfinder in understanding the evidence or determining a fact, by a preponderance of the evidence").

BAS asserts that the repairs to the Aircraft were substantially complete in October

---

[10]"To trigger a *Daubert* inquiry, an expert's testimony, or its 'factual basis, data, principles, methods, or their application,' must be 'called sufficiently into question.'" *Rodriguez*, 242 F.3d at 581 (quoting *Kumho*, 526 U.S. at 149). "Determining whether a movant has sufficiently called into question some aspect of an expert is necessarily case specific." *Reitz v. City of Abilene*, 2018 WL 6181493, at *7 (N.D. Tex. Nov. 27, 2018) (Frost, J.) (holding that defendants had not satisfied the sufficiency requirement because they failed to "provide the expert designations sought to be struck" or to "identify with some precision the opinions sought to be excluded"). Although plaintiffs' briefing is somewhat difficult to follow, the court concludes that their argument that the test flights were performed after additional post-sale repairs to the Aircraft sufficiently calls into question whether Paul's and Robert's testimony is relevant and applicable to facts at issue in this case.

2018 and therefore that Paul's and Robert's testimony is relevant to several issues in this case, including BAS's counterclaim for storage fees and whether plaintiffs failed to mitigate damages by selling the Aircraft in unairworthy status in March 2021.  But BAS relies only on unsworn assertions in its brief to support its contention that the repairs were substantially complete by October 2018.  BAS offers no evidence that Paul's and Robert's testimony reflects the condition of the Aircraft before the sale rather than the Aircraft's condition after additional post-sale repairs were made.  *See* D. Br. (ECF No. 236) at 8 (stating that the "relevant repairs, aside from paperwork issues and tasks to preserve the Aircraft as it laid idle, were substantially completed in October of 2018," but citing no record evidence to support this statement except for plaintiffs' October 19, 2018 letter refusing to accept the Aircraft or pay storage fees).  Unsworn assertions in a brief are not evidence, they are merely argument.  BAS has therefore failed to demonstrate that it more likely than not that Paul's and Robert's testimony will assist the jury in determining facts at issue in this case—such as whether or when the Aircraft was properly repaired prior to the sale.  The court therefore grants plaintiffs' motion to exclude their testimony on the ground that BAS has failed to prove that it is relevant.

\* \* \*

Accordingly, the court denies plaintiffs' motion to strike, grants in part and denies in part plaintiffs' motion to exclude, and denies BAS's motion to exclude, except to the extent

- 27 -

that it limits the scope of testimony as described in this memorandum opinion and order.

**SO ORDERED**.

July 29, 2022.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE