IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AIRCRAFT HOLDING SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> and <br><br> CH300, LLC, <br><br> Plaintiff-counterdefendant, <br><br> VS. <br><br> LEARJET, INC. d/b/a BOMBARDIER AIRCRAFT SERVICES (BAS), <br><br> Defendant-counterplaintiff. | § § § § § § § § § § § § § § § § § § § § Civil Action No. 3:18-CV-0823-D |

MEMORANDUM OPINION
AND ORDER

This is a removed action that arises from damage to a 2005 Bombardier Challenger 300 aircraft ("Aircraft") that occurred when it fell off its jacks during routine periodic maintenance and inspection. Following a bench trial and the entry of judgment, plaintiff Aircraft Holding Solutions, LLC ("AHS") and plaintiff-counterdefendant CH300, LLC ("CH300") (collectively, "plaintiffs") move to amend the findings pursuant to Fed. R. Civ. P. 52(b), or, in the alternative, reconsider pursuant to Rule 59(e),[1] and defendant-

---

[1] Two days after plaintiffs filed their motion, they filed a notice of appeal. Although a notice of appeal generally divests the district court of jurisdiction, under Fed. R. App. P. 4(a)(4) a notice of appeal does not take effect until after the district court rules on a motion filed under Fed. R. Civ. P. 59. Accordingly, the filing of the notice of appeal does not divest this court of jurisdiction to decide plaintiffs' motion.

counterplaintiff Learjet, Inc. d/b/a Bombardier Aircraft Services ("BAS") moves in the alternative to amend the joint pretrial order. For the reasons that follow, the court grants BAS's alternative motion and denies plaintiffs' motion and alternative motion.

I

The court's pertinent findings of fact and conclusions of law are fully set out in its March 14, 2023 memorandum opinion. *See Aircraft Holding Solutions, LLC v. Learjet, Inc.* ("*Aircraft Holding II*"), 2023 WL 2518329 (N.D. Tex. Mar. 14, 2023) (Fitzwater, J.). Accordingly, the court will limit its discussion of the background facts and procedural history to what is necessary to understand this decision.

Plaintiffs are the owner and operator of the Aircraft, which was damaged when it fell off its jacks during routine periodic maintenance and inspection at BAS's Dallas facility (the "Incident"). As of the time of trial, AHS (the Aircraft owner) sued BAS for negligence, and CH300 (the Aircraft operator) sued BAS for breach of contract and violating the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2021). BAS counterclaimed against CH300 for breach of contract and quantum meruit.

Following the trial, the court found that AHS proved that BAS was negligent, but that AHS could not recover on its negligence claim because it failed to prove its diminution-in-value measure of damages. The court found that CH300 failed to prove its DTPA claim against BAS, but that CH300 proved its breach of contract claim against BAS and was entitled to loss-of-use damages in the net sum of $45,765.00 ($113,000 minus an

offset in the sum of $67,235.00).  And the court found that BAS was entitled to recover an offset in the sum of $67,235.00 for the unpaid portion of the 144-month inspection and maintenance services it performed, and was entitled to recover $416,713.73 in quantum meruit for the costs it incurred in preserving the Aircraft.  The court, in pertinent part, entered judgment in favor of BAS on its quantum meruit counterclaim and in favor of CH300 on its breach of contract claim and denied any relief not otherwise granted by the judgment, except for attorney's fees and related nontaxable expenses that may be awarded on separate motion.

Plaintiffs now move to amend the findings pursuant to Rule 52(b), or, in the alternative, to reconsider pursuant to Rule 59(e), and BAS moves in the alternative to amend the joint pretrial order.[2]  The court is deciding the motions on the briefs, without oral argument.

II

A

To prevail on a Rule 59(e) motion to alter or amend a judgment, the moving party must show (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error of law or fact.  *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).  A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th

---

[2]Also pending before the court is CH300's motion for attorney fees, which was filed on March 28, 2023 and will be decided separately in a forthcoming decision.

Cir. 2004). Although courts have "considerable discretion" to grant or deny a Rule 59(e) motion, they use the "extraordinary remedy" under Rule 59(e) "sparingly." *Id*. When considering a motion to alter or amend the judgment, "[t]he court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

Likewise, Rule 52(b) provides that a court "may amend its findings—or make additional findings—and may amend the judgment accordingly." Rule 52(b). The purpose of a Rule 52(b) motion "is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986). A Rule 52(b) motion should not "be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *Garcia v. Stephens*, 2015 WL 6561274, at *2 (N.D. Tex. Oct. 29, 2015) (Lynn, J.) (quoting *Fontenot*, 791 F.2d at 1219).

B

Plaintiffs have neither presented newly discovered evidence nor showed a change in controlling law. Instead, they argue that the court erred in finding that the Aircraft was ready to be returned to service by October 31, 2018; in awarding loss-of-use damages based on the actual cost of replacement travel; in adopting the expert opinion of BAS's expert, Ken Dufour ("Dufour"), regarding the Aircraft's pre-Incident value; in using the $7.2 million subsequent sale figure to calculate diminution in value; in awarding damages on BAS's

quantum meruit claim, which plaintiffs maintain was not within the scope of the trial; and in ruling in BAS's favor on CH300's DTPA claim. The court will address each argument below.

III

Plaintiffs contend that the court erred in finding that, as of October 2018, the Aircraft repairs were completed, the Repair Order was closed, plaintiffs should have retrieved the Aircraft, preservation costs were incurred, and/or the Aircraft was ready to be returned to service. They maintain that the court also erred in its findings regarding whether a test flight was needed to return the Aircraft to service.

In its memorandum opinion, the court found from the trial evidence that "the necessary repairs to the Aircraft had been made by October 31, 2018 and that the Aircraft was ready to be returned to service at that time; all that was needed was plaintiffs' authorization and a test flight, to which plaintiffs refused to consent." *Aircraft Holding II*, 2023 WL 2518329, at *17. In making this finding, the court explained that it "accorded greater weight to the opinions and/or factual testimony of Mario Asselin, Marc Rivest . . . , and Michael Stephen Dittmar over that of [Carl Patrick] Duggins and John E. Cochran, Jr." because "[t]he defense witnesses' opinions were better supported, more reliable, and entitled to greater weight." *Id.* Plaintiffs have not established that the court in its findings made a manifest error of fact.

IV

Plaintiffs next contend that the court erred in awarding loss-of-use damages based on CH300's actual cost of replacement travel rather than on the rental value of a replacement aircraft. They contend that the dry lease methodology used by their expert, Del Fogg ("Fogg"), provided a calculation and value for CH300's loss-of-use damages to a reasonable degree of certainty; that the dry lease methodology is most reflective of ownership, regardless of actual usage, because it reflects the right to use an airplane at will; that the court erred in relying on the opinion of the Supreme Court of Texas in *J & D Towing, LLC v. American Alternative Insurance Corp.*, 478 S.W.3d 649 (Tex. 2016), because that case addressed loss-of-use damages for totally destroyed property as opposed to partially destroyed property; that, under Texas law, a plaintiff is not required to actually "rent a replacement automobile or show any amounts actually expended for alternative transportation," Ps. Br. (ECF No. 313) at 14-15 (emphasis omitted) (quoting *Luna v. N. Star Dodge Sales, Inc.*, 667 S.W.2d 115, 118 (Tex. 1984)); and that the proper measure of damages, as established by CH300 to a reasonable degree of certainty, is the lost rental value of $2,286,450.

As an initial matter, the court rejects plaintiffs' contention that the court erred in relying on *J & D Towing*. Plaintiffs are correct that the damages actually at issue in that case were for totally destroyed property. But in determining whether loss-of-use damages were available in total destruction cases, the court expanded preexisting Texas law on loss-of-use damages from partial-destruction cases to total-destruction cases. As the court noted, partial-

destruction cases had long permitted loss-of-use damages. *See J & D Towing*, 478 S.W.3d at 656 ("Where personal property has been only *partially* destroyed, Texas law is clear as to direct and loss-of-use damages. . . . [W]hether the owner recovers direct damages under the default rule or otherwise, the owner may recover loss-of-use-damages, such as the 'pecuniary loss of the use of an automobile damaged in a collision.'" (citation omitted)).

In awarding CH300 the actual cost of replacement travel, rather than a speculative amount based on a hypothetical dry lease, this court was guided by the following principles articulated in *J & D Towing*:

> Permitting loss-of-use damages in total-destruction cases, however, is not a license for unrestrained raids on defendants' coffers. As with all consequential damages, the availability of loss-of-use damages is necessarily circumscribed by commonsense rules. To begin with, the damages claimed may not be "too remote." This is not to say they must be "the usual result of the wrong," but they must be foreseeable and directly traceable to the tortious act. The damages also must not be speculative. Although mathematical exactness is not required, the evidence offered must rise above the level of pure conjecture. Moreover, the damages may not be awarded for an unreasonably long period of lost use. Whether framed as a duty of mitigation or a doctrine of avoidable consequences, the principle is the same: A plaintiff may not recover loss-of-use damages for a period longer than that reasonably needed to replace the personal property. That principle compels a plaintiff's diligence in remedying his loss and deters an opportunistic plaintiff from dilly-dallying at the expense of the defendant. After all, the role of actual damages is to place the plaintiff in his *rightful* position, not the position he *wishes* to acquire.

*Id.* at 677 (footnotes omitted)

CH300 did not lease another private aircraft to use while the Aircraft was being

repaired. Nor did it present any evidence regarding the inconvenience it allegedly suffered as a result of not having a private aircraft at its disposal. CH300 is correct that Texas law does not, in *all* cases, require a plaintiff to actually rent a replacement to recover loss-of-use damages. *See, e.g.*, *Luna*, 667 S.W.2d at 118 ("[I]n order to prove loss of use . . . , the plaintiff need not rent a replacement automobile or show any amounts actually expended for alternative transportation."). But in this case, given the enormous disparity between the *actual* replacement travel costs ($113,000) and Fogg's *hypothetical* dry lease ($2,286,450), the court finds that awarding the hypothetical cost of renting a replacement aircraft would amount to an impermissible "raid on the defendant's coffers." *J & D Towing*, 478 S.W.3d at 677. For this reason, and for the reasons explained in its memorandum opinion (*see Aircraft Holding II*, 2023 WL 2518329, at *14), the court holds that it did not commit a manifest error of law or fact in rejecting Fogg's hypothetical dry lease methodology as a fair approximation of CH300's loss-of-use damages and instead awarding loss-of-use damages based on CH300's actual cost of replacement travel.

V

The court now considers plaintiffs' arguments that relate to the court's finding that AHS failed to prove diminution-in-value damages.

A

Plaintiffs first contend that the court abused its discretion by relying on Dufour's expert opinion in finding that the pre-Incident value of the Aircraft was $6,725,720. They maintain that Dufour's opinion regarding the pre-Incident value of the Aircraft was "null and

- 8 -

void" at the time Dufour testified at trial, that his appraisal did not account for the interior of the Aircraft, and that the court failed to explain why it did not find the opinions of plaintiffs' experts reliable.

For the reasons explained in its memorandum opinion, (*see Aircraft Holding II*, 2023 WL 2518329, at *5 n.9), the court rejects plaintiffs' argument that Dufour's expert opinion regarding the pre-Incident value of the Aircraft is "null and void" and holds that it did not commit a manifest error of fact. To the extent that plaintiffs posit that Dufour's valuation of the Aircraft should be discounted because he did not view the interior, Dufour specifically explained why the Aircraft's interior would not impact its value. *See* Tr. 4B:67 ("Unless on a value basis, unless we are looking at a brand-new interior that has recently been updated or in the process of updating, usually the interior is kind of a moot point to a given airplane unless it has an extraordinary type of configuration."). Plaintiffs have not otherwise demonstrated that the court committed a manifest error of fact in finding that Dufour's testimony was both credible and reliable or in calculating the diminution in value of the Aircraft using $6,725,720 as its pre-Incident value.

B

Regarding the fair market value of the Aircraft at the time of sale, plaintiffs contend that the court's use of the September 2021 sale price of $7.2 million as an estimate for the value of the Aircraft is inconsistent with its earlier order restricting, as irrelevant, "the testimony of BAS's pilot experts who intended to testify about the performance of the Aircraft during a test flight executed after the sale from CH300 to Central Connecticut." Ps.

Br. (ECF No. 313) at 18.  They also maintain that BAS's statement that the only post-sale work performed on the Aircraft was routine maintenance is "undisputedly false," and that Bill Bergenty's ("Bergenty's") testimony demonstrated "the post-sale work also included, in addition to the landing gear, upper wing plank work on the right hand wing, which was not complete at the time CH300 sold the Aircraft."  *Id.* at 19.  Plaintiffs have not demonstrated a manifest error of fact based on either of these arguments.

The court's reliance on evidence that Bergenty sold the Aircraft for $7.2 million in September 2021 is not inconsistent with its holding in a July 29, 2022 pretrial memorandum opinion and order that BAS had failed to prove that the testimony of two test pilots was relevant "to several issues in this case, including BAS's counterclaim for storage fees and whether plaintiffs failed to mitigate damages by selling the Aircraft in unairworthy status in March 2021."  *Aircraft Holding Solutions, LLC v. Learjet, Inc.*, 2022 WL 3019795, at *11 (N.D. Tex. July 29, 2022) (Fitzwater, J.).  The court explained that, because BAS had offered "no evidence that [the pilots'] testimony reflects the condition of the Aircraft before the sale rather than the Aircraft's condition after additional post-sale repairs were made," BAS had "therefore failed to demonstrate that it [was] more likely than not that [the pilots'] testimony will assist the jury in determining facts at issue in this case—such as whether or when the Aircraft was properly repaired prior to the sale."  *Id.*  BAS's pretrial failure to prove the relevance of its test pilots' testimony was just that.  The court never held (or even implied in its July 29, 2022 memorandum opinion and order) that the fact that the Aircraft later sold for $7.2 million was irrelevant for purposes of determining the value of the Aircraft after it

- 10 -

was maintained as required and returned to service.

Nor have plaintiffs established that the court committed a manifest error of fact in finding that "[o]nce the Aircraft was returned to service and the calendar-driven maintenance was completed, it sold right away for $7.2 million, a figure that . . . reflects its true post-Incident value." *Aircraft Holding II*, 2023 WL 2518329, at *6. Plaintiffs suggest that some of the repairs Bergenty performed on the Aircraft related to the Incident, as opposed to being calendar-driven maintenance. *See* Ps. Br. (ECF No. 313) at 19 ("BAS's statements that the only post-sale work performed was routine maintenance is undisputedly false. [Bergenty's] testimony . . . demonstrated that the post-sale work also included, in addition to the landing gear, upper wing plank work on the right hand wing, which was not complete at the time CH300 sold the Aircraft, in addition to the other 'big items' that 'had to be done.'"). But in the portion of the trial transcript that plaintiffs cite, Bergenty actually testified that he had to "overhaul landing gear" and address some "big items." Tr. Vol. 4A:41. He did *not* testify that any of these "big items" related to the Incident. In fact, he specifically testified that none of the work he performed after he purchased the Aircraft "ha[d] to do with repairing the damage to the [A]ircraft from this jacking incident." *Id.* at 4A:18-19.

VI

Plaintiffs next ask the court to reconsider its award of $416,713.73 in quantum meruit for the costs BAS incurred in preserving the Aircraft.

A

1

As a preliminary matter, the court addresses plaintiffs' contention that BAS waived its quantum meruit counterclaim by failing to include it in the pretrial order ("Pretrial Order"), adducing no evidence in support of this counterclaim at trial, and failing even to mention the counterclaim at trial, other than during closing argument.

BAS responds, *inter alia*, that CH300 waived its waiver argument by not raising it until the instant motion to reconsider; that an issue is considered to be preserved if it is raised in the pleadings, if it is raised in the pretrial order, or if the parties have tried the issue by consent, and that all three circumstances apply here; that it pleaded its quantum meruit counterclaim, and the parties and the court clearly recognized at trial that this counterclaim was being tried; and that, in sum, "CH300 was put on notice of the issue by pleadings prior to trial, did not object to the relevant evidence when it was introduced, cross-examined the relevant witnesses on that evidence, and submitted a post-trial brief that addressed the claim of quantum meruit on the merits," D. Br. (ECF No. 320) at 19. Alternatively, and by separate motion, BAS moves to amend the Pretrial Order to explicitly reference its quantum meruit counterclaim.

Plaintiffs reply that CH300 did not waive its argument regarding BAS's pretrial

omission; that the parties did not try BAS's quantum meruit counterclaim by consent and allowing post-trial relief in order to validate a $400,000 judgment on a claim not included in the Pretrial Order would be the "epitome of manifest injustice," Ps. Reply (ECF No. 322) at 9; that the evidence BAS contends it presented in support of its quantum meruit counterclaim actually went to BAS's breach of contract counterclaim; and that CH300 did not object to the presentation of such evidence at trial because, in light of the Pretrial Order omission, that evidence went exclusively to BAS's breach of contract counterclaim. Plaintiffs oppose BAS's alternative motion to amend the Pretrial Order largely on the same grounds, arguing, in addition, that amendment of the Pretrial Order at this point would result in injustice.

2

It is well-settled that a final pretrial order supersedes all prior pleadings and "controls the course of the action unless the court modifies it." Rule 16(d); *see also E.E.O.C. v. Serv. Temps*, 2010 WL 5108733, at *3 (N.D. Tex. Dec. 9, 2010) (Fitzwater, C.J.) ("The joint pretrial order supersedes all pleadings and governs the issues and evidence to be presented at trial." (citation omitted)), *aff'd*, 679 F.3d 323 (5th Cir. 2012). But a party may move under Rule 15(b)(2) "to amend the pleadings to conform them to the evidence and to raise an unpleaded issue" "at any time, *even after judgment.*" (emphasis added). Under Rule 16(e), the court may modify the pretrial order "to prevent manifest injustice."

Assuming *arguendo* that the Pretrial Order in fact omitted BAS's quantum meruit counterclaim, the court concludes that it would be manifestly unjust not to modify the Pretrial

- 13 -

Order to include this counterclaim.

First, BAS clearly pleaded the quantum meruit counterclaim in a pleading filed October 23, 2020 and captioned "Original Compulsory Counterclaim."[3] BAS never amended its counterclaims or otherwise affirmatively indicated that it intended to abandon the quantum meruit counterclaim, which was filed more than two years before the commencement of trial.

Second, BAS's quantum meruit counterclaim seeks, *in addition to the $1,000 per day storage fees*, "the reasonable value of the other services and materials BAS has provided to AHS/CH300." Countercl. ¶ 16. During trial, BAS presented extensive evidence on the value of these materials and services, which were separate and distinct from the $1,000 per day storage fees BAS sought, and plaintiffs never objected to this evidence as exceeding the scope of the Pretrial Order.

Third, as plaintiffs acknowledge in their response, *plaintiffs* omitted their negligence claim from the proposed pretrial order, and it was the *court* who brought this omission to the parties' attention during a pretrial conference. *See* Ps. Resp. (ECF No. 323) at 6 ("[T]he Court queried the parties as to whether the Plaintiffs indeed intended to pursue the claim, and allowed the parties to . . . resubmit the joint pre-trial order with the negligence claim included."). The court did not similarly bring to the parties' attention BAS's omission of its quantum meruit counterclaim. Again, assuming *arguendo* that the Pretrial Order in fact

---

[3]The counterclaim is labeled "Quantum Meruit/Unjust Enrichment."

omitted BAS's quantum meruit counterclaim, fairness dictates that BAS be given an equal opportunity to amend the Pretrial Order.

Fourth, plaintiffs have not convinced the court that CH300 will be prejudiced by the amendment. They maintain that "[a]llowing post-trial relief in order to validate a $400,000 judgment on a claim not included in the pre-trial order even if tried, which it wasn't, would in fact be the epitome of manifest injustice." P. Reply (ECF No. 322) at 9. But they do not contend that their presentation of evidence at trial would have been *any different* had the Pretrial Order expressly referenced BAS's quantum meruit counterclaim. Nor do they contend that there are *any additional* arguments[4] that they would have raised had they not believed the quantum meruit counterclaim was waived. Plaintiffs only assert that they would have briefed the claim "in depth." P. Resp. (ECF No. 323) at 5.

Accordingly, the court in its discretion grants BAS's alternative motion to amend the Pretrial Order to expressly include the quantum meruit counterclaim.

B

Turning to the merits, plaintiffs contend, as they did in their post-trial brief, that BAS's quantum meruit counterclaim fails because post-Incident repair of the Aircraft was

---

[4]In their post-trial brief, plaintiffs *did* raise the argument that BAS's quantum meruit counterclaim was barred by contract. The court considered this argument when making its findings of fact and conclusions of law, and it again considers this argument below, *see infra* § VI(B), which plaintiffs are reurging in their motion for reconsideration. Plaintiffs do not point to any other argument that they would have raised with respect to BAS's quantum meruit counterclaim but did not raise because they believed the counterclaim had been waived or abandoned.

- 15 -

governed by contract. They posit that "even though BAS closed the Repair Order in 2018 and notified CH300 repair was complete, repair work continued on the Aircraft well into 2021," and that "BAS's obligation to preserve the Aircraft while performing [these] repairs was a continuing contractual obligation." Ps. Br. (ECF No. 313) at 21. The court concludes that it did not commit a manifest error of fact or law.

As explained in its memorandum opinion, according greater weight to the defense witnesses' opinions, the court found that "that the necessary repairs to the Aircraft had been made by October 31, 2018 and that the Aircraft was ready to be returned to service at that time." *Aircraft Holding II*, 2023 WL 2518329, at *17. Plaintiffs have failed to demonstrate that the court committed a manifest error of fact in finding that the repairs were complete by October 31, 2018. Accordingly, although plaintiffs are correct that, generally, a party "who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials," *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988), the court has rejected the factual premise underlying plaintiffs' argument—i.e., that repairs related to the Incident continued well into 2021. The "contract" in this case (which is composed of the Proposal and Work Order together with the Proposal Terms and Conditions and Work Order Terms and Conditions) does not cover post-repair preservation of the Aircraft, which CH300 demanded after BAS closed the Work Order and notified CH300 that the repair work was finished. *See Aircraft Holding II*, 2518329, at *18 n.34.

VII

Plaintiffs contend that the court erred in finding in BAS's favor on CH300's DTPA claim.

A

Plaintiffs first contend that the court erred in finding that CH300 did not prove that any statement in the Proposal was false, misleading, or deceptive. They posit that it was foreseeable that BAS would need the necessary parts to repair or replace any damage or issues discovered during the 144-month inspection; that BAS represented in the "pre-contract Proposal" that its "OEM network specializes in only Bombardier products. . . . Each of our centers is stocked with significant parts inventory and specialized tooling for your convenience," Ps. Br. (ECF No. 313) at 22 (quoting P. Ex. 11 at 1); that "[b]ecause the inspection included the entire plane, the nose, the wings, the fuselage, the tail, it WAS foreseeable any of those parts could be required for replacement in connection with a 144-month inspection," *id.* at 23; and that CH300 relied on that promise, the need did arise, and BAS never had those parts in stock. The court disagrees for the reasons explained in its memorandum opinion:

> Even if it were true, as CH300 contends, that BAS did not have unmatched expertise and a parts inventory sufficient to *repair* the Aircraft, these facts do not persuade the court, as trier of fact, that any statement in the Proposal was false or misleading. This is because the Proposal related only to the 144-month inspection and maintenance described in the Work Order, not to any post-Incident repair, and there is no evidence that BAS's statements were false or misleading in the context of the bargained-for services, i.e., the 144-month inspection and

- 17 -

related maintenance.

*Aircraft Holding II*, 2023 WL 2518329, at *8 (footnote omitted).

B

Plaintiffs next contend that, to the extent the court ruled that the representations were made in the contract for performance of the 144-month inspection, "the record is inconsistent with that conclusion" because "[t]he representations were made outside of the contract at issue." Ps. Br. (ECF No. 313) at 23. They maintain that

> [t]he Proposal, along with the "click on" Proposal and Work Order Terms and Conditions, was provided to Plaintiffs as a form of an agreement to be potentially signed, and as an inducement to contract prior to the time it is executed. . . . The representations made upon providing the Proposal were independent and freestanding, outside the contract which did not exist at the time, and not subject to the Economic Loss Rule.

*Id.*

Plaintiffs do not argue that the court erred in holding that the representations in the Proposal Terms and Conditions—including that customer authorization will be obtained prior to working on discrepancies found during the work scope and that "major repairs" are recorded on FAA form 377—"could not have been false, deceptive, or misleading with respect to *post-Incident* repairs and preservation, because that work falls outside the scope of the Proposal and accompanying Proposal Terms and Conditions." *Aircraft Holding II*, 2023 WL 2518329, at *8. Accordingly, the court declines to address plaintiffs' argument directed at the court's *alternative* holding.

C

The court also disagrees that CH300 demonstrated that BAS's alleged misrepresentations were unconscionable. This is because, for the reasons explained in detail in the court's memorandum opinion, plaintiffs have not actually established that BAS made a misrepresentation in the Proposal, the Proposal Terms and Conditions, or otherwise. *See Aircraft Holding II*, 2023 WL 2518329, at *10. Nor have they shown that BAS took advantage of CH300's lack of knowledge "and 'that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated.'" *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998)).

\* \* \*

Accordingly, for the reasons explained, the court grants BAS's May 1, 2023 alternative motion to amend joint pretrial order and denies plaintiffs' April 11, 2023 motion to amend findings pursuant to Rule 52(a) and alternative motion to reconsider pursuant to Rule 59(e).

**SO ORDERED**.

August 2, 2023.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE